UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  11-61851-CV-COHN

Magistrate Judge Seltzer

JAMES RIVER INSURANCE COMPANY,

    Plaintiff,

vs.

OSCAR I. GARCIA, ARCHITECT, P.A., a
Florida Corporation, OSCAR I. GARCIA,
individually; and 200 EAST PARTNERS, LLC,
a Florida limited liability company,

    Defendants,

OSCAR I. GARCIA, ARCHITECT, P.A.

    Counter-Plaintiff,

vs.

JAMES RIVER INSURANCE COMPANY,

    Counter-Defendant.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants Oscar I. Garcia, Architect, P.A. and Oscar I. Garcia's ("Garcia") Motion for Summary Judgment [DE 26], Plaintiff James River Insurance Company's Motion for Summary Judgment [DE 32], Plaintiff's Response in Opposition to Garcia's Motion [DE 38], Garcia's Response to Plaintiff's Motion and Reply in support of Defendant's Motion [DE 39], and Plaintiff's Reply [DE 53].  The Court has carefully considered the motion, responses, and replies, all exhibits attached thereto, and is otherwise fully advised in the premises.

### I. BACKGROUND

James River Insurance Company ("James River" or "Plaintiff") filed this

declaratory judgment action to determine whether there is a duty to defend and/or indemnify Defendant Oscar I. Garcia, Architect, P.A. under a liability insurance policy issued by Plaintiff in connection with an underlying lawsuit filed by 200 East Partners against the Garcia Defendants in this case.  Oscar Garcia, P.A. filed counterclaims against James River seeking a declaratory judgment for coverage under a 2009 policy (Count I), a declaratory judgment for coverage under the 2010 policy (Count II), and a claim for breach of contract under the 2009 policy (Count III).[1]

Garcia purchased a "Claims Made and Reported Policy" from James River to cover his professional liability.  See Exhibit 1 to Affidavit of Oscar Garcia, attached to Statement of Undisputed Facts [DE 27-1 at p. 7 of 68].  The policy issued on May 29, 2009 for a one year period.  Statement of Facts, ¶ 1 [DE 27].  In January of 2010, James River notified its surplus lines broker, who in turn notified Garcia's insurance agent, that a condominium exclusion would be placed upon the policy at renewal. Declaration of David Gough, ¶ 4, 8-9 and Exhibits A and B to Gough Declaration [DE 37-2].  Garcia then applied for renewal coverage on February 8, 2010.  Exhibit C to Gough Declaration [DE 37-2 at pp. 7-15].  James River sent a Notice of Nonrenewal for the 2009 Policy on March 1, 2010.  Exhibit 2 to Garcia Affidavit [DE 27-1 at p. 30]. However, pursuant to Garcia's application, James River offered a Quote for replacement coverage, which listed a new Residential Condominium/Townhome Exclusion.  Exhibit E to Gough Declaration [DE 37-2 at pp. 19-23].  On May 20, 2010,

---

[1] For ease of reference, the policy in effect from May 29, 2009 until May 29, 2010 is referred to as the "2009 Policy," while the policy in effect from May 29, 2010 until May 29, 2011, is referred to as the "2010 Policy."

Garcia accepted the new policy.  Exhibit G to Gough Declaration.  The new policy cost 30% less than the 2009 policy.  Compare Declarations pages [DE 27-1 at pp. 5, 32].  This price reduction was due to the new Residential Condominium/Townhome Exclusion, which excluded any damages arising directly or indirectly out of the performance of or failure to perform professional services related to residential condominium(s) or townhomes.  Exhibit 3 to Garcia Affidavit [DE 27-1 at p. 55].

Both the 2009-2010 policy and the 2010-2011 policy[2] contain a provision entitled "Extended Reporting Period."  This section applies "in the event of cancellation or non renewal," and allows a "right to an Extended Reported Period as follows:"[3]

    (a)    Automatic Extended Reporting Period

        Coverage as provided under this Policy shall automatically continue for a period of sixty (60) days following the effective date of such cancellation or non renewal, but only with respect to "Claims" for "Wrongful Acts" committed before the effective date of such cancellation or non renewal.

    (b)    Optional Extended Reporting Period

        You shall have the right, upon payment of the additional premium set forth in the Declarations, to an extension of the coverage provided under this Policy for the term set forth in the Declarations following the effective date of such cancellation or non renewal, but only with respect to "Claims" for "Wrongful Acts" committed before the effective date of such cancellation or non renewal.

        This right shall terminate, however, unless written notice of such election and payment of the additional premium is received by us

---

[2] The 2009-2010 Policy will be referred to as the "2009 Policy," while the 2010-2011 Policy will be referred to as the "2010 Policy."

[3] The Court notes that the policy provision uses the term "non renewal" and "nonrenewal" interchangeable.  The Court treats these two spellings of the term as meaning the same thing.

> not later than thirty (30) days after the effective date of such cancellation or non renewal.  A change in Policy terms and conditions and/or premium shall not be considered non renewal for purposes of triggering either Extended Reporting Period.

Section VIII of Policy, Exhibit 1 to Garcia Affidavit [DE 27-1 at 14]; Exhibit 3 to Garcia Affidavit [DE 27-1 at 41].

On May 24, 2010, 200 East sent a Notice of Claim to Garcia for deficiencies and delay in his work on the "condominium project located at 200 East Palmetto Park Road, Boca Raton, FL."  Exhibit A to Complaint, p. 4 [DE 1-5].  On June 25, 2010, Garcia forwarded the claim to James River.  Id. at p. 2.  The underlying law suit filed by 200 East on November 12, 2010, asserts claims against Garcia for breach of contract and professional negligence regarding Garcia's provision of architectural services for the completion of a ten story "commercial/condominium building" for 200 East.  Exhibit B to Complaint [DE 1-6].  Both parties have moved for summary judgment on their respective claims regarding coverage (or lack thereof) under the insurance policies.

## II.  DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To

discharge this burden, the movant must point out to the Court that "there is an absence of evidence to support the non-moving party's case."  Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Federal Rule of Civil Procedure 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

### B.  Parties' Arguments

James River seeks a declaration that because the claim against Garcia arose from work done for a condominium project that was not forwarded to James River until June of 2010, coverage is excluded from the 2010 policy based upon the Residential Condominium/Townhome Exclusion.  James River contends that because it was not

5

notified of the claim until June of 2010, under the claims made policy provisions, there cannot be coverage under the 2009 policy.

Garcia, on the other hand, argues that the claim made by 200 East is covered under the 2009 policy because it was reported to Garcia on May 24, 2009, or, because it is covered under the Automatic Extended Reporting Period provision of the 2009 policy. Garcia contends that because James River sent a nonrenewal notice for the 2009 policy, the plain language of the policy allows for an automatic 60 day extension. Garcia alternatively contends that if the 2010 policy is considered a renewal of the 2009 policy, then the claim should be covered under the 2010 policy because Florida courts have held that a "renewal" is subject to the same terms and conditions as the original policy. Hartford Accident & Indemnity Co. v. Sheffield, 375 So. 598, 600 (Fla. Dist. Ct. App. 1979).[4]

### C.  Claims Made Policies

The liability policies at issue in this action provide for "claims made coverage." A "claims-made policy is a policy wherein the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term." Gulf Ins. Co. v. Dolan, Fertig and Curtis, 433 So.2d 512, 514 (Fla. 1983) (internal citation omitted). These policies, such as those at issue in this action, require that notice be given during the policy period itself. 433 So.2d at 515. The Florida Supreme

---

[4] In its reply in support of its motion (which also served as its response to Plaintiff's motion), the Garcia Defendants raise for the first time that the underlying project is not subject to the condominium exception. A party cannot raise an issue for the first time in reply, particularly here, where there has never been a prior dispute that the 200 East project was a condominium project as defined in the Residential Condominium/Townhome Exclusion.

Court held that it would not impose an extension of reporting time because the parties did not agree to such an extension.  Id.  As described above, the policies at issue did include a specifically defined extended reporting period.

### D.  Extended Reporting Period and § 627.4133 Notice of Nonrenewal

Under Fla. Stat. § 627.4133, an insurer is required to give its insured at least 45 days advance written notice of nonrenewal.[5]  Florida courts have interpreted "nonrenewal" in this section to include "a policy with material changes in terms and conditions from the prior policy."  U.S. Fire Ins. Co. v. Southern Security Life Ins. Co., 710 So.2d 130, 132 (Fla. Dist. Ct. App. 1998).  If an insurer fails to give 45 days notice of nonrenewal, then "the coverage provided to the named insured shall remain in effect until 45 days after the notice is given or until the effective date of replacement coverage obtained by the named insured, whichever occurs first."  Fla. Stat. § 627.4133(1)(c).

As described above, James River timely gave the required statutory notice of nonrenewal.  At the time of this notice in March of 2010, the parties were already negotiating a replacement policy that would exclude coverage for condominiums, due to a business decision by James River.  The parties then bargained for and agreed to a replacement policy that began on May 29, 2010.

Garcia contends that it is entitled to the 60 day Automatic Extended Reporting Period provision of the 2009 policy because that policy was the subject of a nonrenewal

---

[5] James River points out in its response that as a surplus lines insurer, it is not covered by § 627.4133, but is covered by § 626.9201, a substantially similar statute. Upon a review of these two statutory provisions, any case law interpreting § 627.4133 would also apply to § 626.9201.

notice.  Under Florida law, insurance contracts are construed according to their plain meaning.  Garcia v. Fed. Ins. Co., 969 So.2d 288, 291 (Fla. 2007).  James River argues that the last sentence of Section VIII – Extended Reporting Period, states that "a change in Policy terms and conditions and/or premium shall not be considered non renewal for purposes of triggering **either** Extended Reporting Period" (emphasis added).  As shown above in page 3 of this order, this sentence appears in a paragraph found below Section VIII, subparagraph (b), which describes the Optional Extended Reporting Period.

Garcia argues that this limitation is not part of the subparagraph (a) Automatic Extended Reporting Period; that the placement of this limitation makes its application to the Automatic Extended Period ambiguous; or, that this limitation is contrary to Fla. Stat. § 627.4113 and cannot apply in this action.  The use of the term "either" to modify "Extended Reporting Period" within the limitation on what constitutes "non renewal" leads this Court to read the plain language of the Policy to mean that the limitation does apply to the "Automatic Extended Reporting Period" in subparagraph (a) of Section VIII.  While Garcia is correct that the insurance policy would be more clear if this sentence was set off in its own paragraph, the language itself is not ambiguous, and is clear that neither Extended Reporting Period is triggered by a change in policy terms and conditions.  Under Florida law, a policy provision "is not ambiguous simply because it is complex or requires analysis."  Garcia, 969 So.2d at 291.  If the term "either" were not modifying "Extended Reporting Period," then the Court would agree with Garcia that the

provision is ambiguous, and therefore construed against the insurer.[6]  However, that is not the case in this policy.

Garcia also argues that § 627.4113 requires that James River's actions in this case be deemed a "nonrenewal," and therefore the limitation on the contractual provision for automatic extension cannot apply.  As discussed above, James River did send a statutory notice of nonrenewal of the 2009 Policy.  Contrary to Garcia's contentions, the statute and Florida law do not require application of a particular contractual provision, nor do they forbid the application of the limitation in this case.  The purpose of the statute, as explained in U.S. Fire Ins. Co. v. Southern Security Life Ins. Co., 710 So.2d at 131, "is to enable an insured to obtain coverage elsewhere before the insured is subjected to risk without protection."  The notice provision was not intended to overturn prior Florida Supreme Court decisions declining to mandate an extended reporting period (Dolan) or relying on the plain meaning of the insurance contract (Garcia).  Proper notice was given by James River to Garcia that the terms of the 2009 were going to change.  That is all the statute requires.

James River further contends that a court can apply a definition in an insurance policy even if the same term is defined differently in a statute.  General Fidelity Ins. Co.

---

[6]   [U]nder Florida law, when a term in an insurance policy is ambiguous, the court must construe it in favor of the insured and against the insurer. *See Gas Kwick, Inc. v. United Pacific Insurance Co.,* 58 F.3d 1536, 1539 (11th Cir.1995)(quoting *Davis v. Nationwide Life Ins. Co.,* 450 So.2d 549, 550 (Fla. 5th DCA 1984)). An insurance contract is deemed ambiguous if it is susceptible to two or more reasonable interpretations that can fairly be made.

Continental Cas. Co. v. Wendt, 205 F.3d 1258, 1261 -1262 (11th Cir. 2000).

v. Foster, 808 F.Supp.2d 1315, 1321 (S.D. Fla. 2011).  In the Foster decision, when deciding whether the components of defective gypsum in drywall, sulfur and strontium, were excluded "pollutants" under an insurance policy, the court held that a Florida statute that defined gypsum as "non-hazardous in nature" did not apply, as "hazardous" is not a necessary attribute of a "pollutant," as defined in the insurance policies.  Id.  In the present action, although both the statute and the policy use the term "nonrenewal," the contract merely states that a change in policy terms and/or premium is not considered "non renewal" for purposes of triggering an extended reporting period.  This contractual language is not at odds with Florida law requiring a notice to an insured when policy changes are sufficient to be deemed a nonrenewal for notice purposes.

### E.  Remaining Arguments

Garcia argues in the alternative that if the 2010 policy is considered a renewal of the 2009 policy, then the claim should be covered under the 2010 policy because James River added an exclusion which constitutes an unenforceable material change to a renewal policy.  Garcia Motion at 2 [DE 26].  In North Pointe Casualty Ins. Co. v. Arden Ins. Assoc., Inc., 75 So.3d 798 (Fla. Dist. Ct. App. 2011), the court held that because the insurer failed to give written notice to its insured regarding nonrenewal of its prior year policy, § 627.4133(1)(c) would apply to continue coverage on the same terms and conditions as the original policy.  However, in this action a proper § 627.4133(1)(a) notice was issued.  Therefore, § 627.4133(1)(c) does not apply.  The Court finds no other authority in Florida law that supports Garcia's argument.

### III. CONCLUSION

The Court concludes that there are no disputed issues of material fact concerning whether the 2009 or 2010 insurance policies cover the underlying claim by 200 East against the Garcia Defendants. Based upon these undisputed facts, the Court concludes that there is no coverage under either policy. The claim was not made during the term of the 2009 Policy and the Extended Reporting Period was not triggered. The claim is not covered under the 2010 Policy because of the Residential Condominium/Townhome Exclusion.

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Defendants Oscar I. Garcia, Architect, P.A. and Oscar I. Garcia's Motion for Summary Judgment [DE 26] is hereby **DENIED**;

2. Plaintiff James River Insurance Company's Motion for Summary Judgment [DE 32] is hereby **GRANTED**;

3. The Court will separately enter a judgment in this action.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 13th day of April, 2012.

/s/ James I. Cohn
JAMES I. COHN
United States District Judge

Copies furnished to:

counsel of record on CM/ECF